UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEY SCHREIBER,

               Plaintiff,

    v.

CATALYST NUTRACEUTICALS LLC,

               Defendant.

Case No. C22-1571-SKV

ORDER GRANTING MOTION TO TRANSFER VENUE

      This matter comes before the Court on Defendant Catalyst Nutraceuticals LLC's ("Catalyst") Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). Dkt. 16. Having reviewed the motion and all papers filed in support or opposition thereto, the Court enters the following Order.

## I.    BACKGROUND

      Plaintiff Joey Schreiber ("Schreiber") co-founded Pacific Coast Naturals, LLC, a Washington limited liability company. Dkt. 19 at 2. Catalyst, a Georgia limited liability company, acquired Pacific Coast Naturals in April 2019. *Id.* That same month, Schreiber was hired by Catalyst to be its Vice President of E-Commerce Sales. *Id.* Schreiber entered his employment agreement with Catalyst on April 1, 2019 ("Agreement"). Dkt. 16 at 3. Importantly, the Agreement contained a termination provision and defined the terms of

Schreiber's employment with Catalyst, including his duties, compensation, annual bonus, and benefits. *See* Dkt. 17, Ex. A.

Schreiber alleges Catalyst subsequently failed to pay him bonuses owed under the Agreement. Dkt. 19 at 2-3. Schreiber raised complaints about the unpaid bonuses to Catalyst, and Catalyst subsequently terminated him. *Id.* at 2-4. As a result, Schreiber filed a complaint in King County Superior Court, *see* Dkt. 1-1, which Catalyst promptly removed to this Court. *See* Dkt. 1. Catalyst now moves for transfer of venue under 28 U.S.C. § 1404(a), arguing the Agreement contains a forum selection clause that applies to Schreiber's claims and requires this dispute be resolved in Georgia. The forum selection clause in the Agreement provides:

> **Governing Law; Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its choice of law provisions. Any legal action or proceeding with respect to any claim or dispute arising out of or relating to this Agreement, or the breach thereof, must be brought exclusively in the courts of the State of Georgia or of the United States District Court for the Northern District of Georgia. By execution of this Agreement, each of the Parties accepts, generally and unconditionally, the exclusive venue and jurisdiction of the aforesaid courts.

Dkt. 17, Ex. A at ¶12.

## II.   DISCUSSION

Pursuant to the forum selection clause in the Agreement, Catalyst seeks a transfer of venue to the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1404(a). Schreiber opposes the motion, arguing the forum selection clause is inapplicable to his claims, that Washington's public interests favor resolution of this matter before a Washington court, and that the forum selection clause is fundamentally unfair. *See* Dkt. 19. The Court concludes the forum selection clause in the Agreement applies to Schreiber's claims and is both valid and

enforceable.  The Court thus grants Catalyst's motion to transfer venue to the Northern District of Georgia, Atlanta Division.

A. The Forum Selection Clause Applies to Plaintiff's Claims

Courts sitting in diversity in the Ninth Circuit use federal contract law to determine the applicability of a forum selection clause in an agreement between the parties.  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (internal citations omitted).  A dispute "arises out of" an agreement if it "relat[es] to the interpretation and performance of the contract itself."  *Id.* (citing *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011)).  In contrast, a dispute "relates to" an agreement if it merely "reference[s] the agreement or [has] some 'logical or causal connection' to the agreement.'"  *Id.* (citing *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3rd Cir. 1997)).  Moreover, "[t]he dispute need not grow out of the contract or require interpretation of the contract" to be considered "relate[d] to the contract."  *Id.* (internal citations omitted).

The forum selection clause at issue here encompasses "any claim or dispute *arising out of or relating to*" the Agreement.  Dkt. 17, Ex. A at ¶12 (emphasis added).  Schreiber's claims regarding Catalyst's failure or refusal to pay wages (first and second causes of action) are clearly related to the Agreement because any right he may have to be paid wages by Catalyst is premised on the Agreement, which defines the terms of his compensation and benefits (including bonuses).  *See* Dkt. 1-1 at ¶¶4.2-4.8.  Likewise, Schreiber's claim for breach of the implied covenant of fair dealing (third cause of action) is premised on the parties having entered "an agreement" for Catalyst to "pay him bonuses" and Catalyst's related duty "to interpret the provisions of the bonus compensation" in good faith.  *Id.* at ¶¶4.10-4.13.  Finally, Schreiber's claims relating to retaliation or wrongful termination (fourth, fifth, sixth, and seventh causes of

1 action) relate to the Agreement because they are each based on his status as an employee with
2 Catalyst—a relationship he would not have had but-for the Agreement.  By its terms, therefore,
3 the forum selection clause in the Agreement applies to the claims at issue in this dispute.

      B.      <u>The Forum Selection Clause is Valid and Enforceable</u>

In cases *not* involving a forum selection clause, federal courts considering a motion under § 1404(a) evaluate "both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc. v. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).  But where a forum selection clause applies to the dispute, courts must adjust their analysis by giving the clause "controlling weight in *all but the most exceptional cases*." *Id.* at 63 (emphasis added).  A valid forum selection clause "represents the parties' agreement as to the most proper forum," and enforcing such a clause "protects their legitimate expectations and furthers vital interests of the justice system." *Id.*  As such, courts considering a § 1404(a) motion premised on a forum selection clause must give no weight to the plaintiff's choice of forum and "should not consider arguments about the parties' private interests," as any such arguments have been waived.  *Id.* at 64.

This is not an "exceptional case" that warrants disregard of the applicable forum selection clause.  Schreiber argues Washington has a "strong interest" in resolving diversity cases "in the state at home with the law."  Dkt. 19 at 8.  But the one case Schreiber cites, *Wilton v. Hallco Industries, Inc.*, No. C08-1470RSM, 2009 WL 113735 (W.D. Wash. Jan. 15, 2009), does not support this conclusion.  *See id.*  The court in that case opined that if any district had "an interest in litigating a discrimination claim brought under Washington statutes and common law," it was in Washington.  *Id.* at *4.  But this was just one of many factors the court considered in

ORDER GRANTING MOTION TO TRANSFER
VENUE - 4

determining whether to transfer or dismiss the case, as the underlying contract did not have a forum selection clause.  *See id.*

Schreiber next argues Washington "considers statutory wage protections and wrongful termination to be public policies of the highest order," and therefore his claims must be heard by a Washington court.  Dkt. 19. at 9-11.  But even if Washington has "a long and proud history of being a pioneer in the protection of employee rights," Dkt. 19 at 9-10 (citing *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 300, 996 P.2d 582, 586 (2000)), this has no bearing on whether this state has a "strong interest" in having employment claims be litigated in Washington.  Moreover, "a plaintiff who files suit in violation of a forum selection clause . . . is entitled to no concomitant 'state law advantages.'"  *Atl. Marine Constr. Co.*, 572 U.S. at 65.  Schreiber points to no Washington public policy favoring resolution of employment disputes in Washington, and his allegation that a Georgia judge would be incapable of accurately applying Washington's laws also falls short.  *See* Dkt. 19 at 10-11.  As Catalyst points out, "federal judges routinely apply the law of a State other than the State in which they sit."  *Atl. Marine Constr. Co.*, 572 U.S. at 67.

Schreiber's arguments as to this being a local issue to be resolved locally and as to court congestion in Georgia are likewise implausible.  Schreiber does appear to reside in Washington, but Catalyst is a Georgia-based company and the courts in that state have an equal claim to the locality of this dispute.  Moreover, an alleged four-month difference in the average speed at which disputes in the Western District of Washington go to trial versus disputes in the Northern District of Georgia holds little, if any, weight in the face of a valid forum selection clause.

Finally, Schreiber's argument that the differing forum selection clauses in the Agreement and the separation agreement proposed by Catalyst constitute evidence that those clauses are

"fundamentally unfair," or that Catalyst acted in "bad faith," are not cogent. *See* Dkt. 19 at 13-14. It is undisputed that Schreiber did not sign the separation agreement. *See* Dkt. 20 at 12, fn. 9. Even if he had, the law he cites does not support his argument.

At bottom, Schreiber has pointed to no "exceptional factors" that would direct this Court to go against the forum selection clause in the Agreement. The clause is thus valid and enforceable. 28 U.S.C. §1404(a) is the mechanism by which federal courts enforce a valid forum selection clause that points to a particular federal district, and this matter should be transferred to the Northern District of Georgia, Atlanta Division, under that statute. *Atl. Marine Constr. Co.*, 571 U.S. at 59.

## CONCLUSION

For the reasons discussed herein, Catalyst's Motion to Transfer Venue under 28 U.S.C. § 1404(a), Dkt. 16, is GRANTED. This matter is hereby TRANSFERRED to the Northern District of Georgia, Atlanta Division.

Dated this 9th day of January, 2023.

S. KATE VAUGHAN
United States Magistrate Judge